UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL TROUTMAN,

Plaintiff,

v.                                                        CAUSE NO. 3:22-CV-250-DRL-MGG

DAVID LIEBEL *et al.*,

Defendants.

OPINION AND ORDER

Michael Troutman, a prisoner proceeding without a lawyer, filed an amended

complaint under 42 U.S.C. § 1983. (ECF 25.) Under 28 U.S.C. § 1915A, the court must

screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a

claim upon which relief may be granted, or seeks monetary relief against a defendant

who is immune from such relief. To proceed beyond the pleading stage, a complaint must

contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic

Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because Mr. Troutman is proceeding without counsel, the court must give his allegations

liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Mr. Troutman is incarcerated at Westville Correctional Facility (Westville). He is

African-American and a practicing Muslim. He describes several incidents in which

prison staff allegedly interfered with his right to practice his religion and his right to receive mail.

He first claims that in October 2020, he tried to order prayer beads and three Kufis for use in his religious practice, but was told by Michael Gapski, the prison's mail room supervisor, that his order would not be filled because it was four days late. He claims that Mr. Gapski, as well as Indiana Department of Correction Director of Religious Services David Liebel, Chaplain Kevin Conklin, and Deputy Warden Sharon Hawk, were responsible for notifying him about the deadline but failed to do so and denied his request to purchase these items.

He next claims that in March 2021, he submitted a purchase order for certain religious items he intended to use during the upcoming Ramadan holiday, including scented prayer oils, Halal soaps, toothpaste, a padded prayer rug, and a large paperback Qur'an. He claims Director Liebel, Chaplain Conklin, Chaplain William Croto, and Chaplain Ismail Abdul Aleem refused to permit him to have any of these items except for the Qur'an. He claims another prisoner was allowed to have "most of the same items." He was forced to go without these items during Ramadan, which he claims inhibited his ability to celebrate the religious holiday.

Later that same month, he claims Mr. Gapski interfered with his receipt of "legal mail" by marking a piece of mail sent to him "return to sender" without attempting to deliver it to him because, although it had his full name, it did not have his IDOC number. In another incident that same month, he claims his family ordered him a dictionary, a thesaurus, and a "vocabulary builder" on Amazon. He claims that Mr. Gapski denied

ever receiving the books. He speculates that Mr. Gapski intentionally destroyed the books or gave them to another inmate in retaliation for grievances he had filed about Mr. Gapski.

Also in late March 2021, he claims Director Liebel and Chaplains Aleem and Croto came to his cell and told him to "get dressed for a religious meeting." He claims he was then "removed from his room" by unknown members of the prison's E-Squad and unknown Indiana "parole agents." He claims that while he was being escorted away, Director Liebel and the two Chaplains entered his cell and began taking pictures of various items. They told him they were confiscating his Qur'an because it had a hard cover on it. When he returned approximately 90 minutes later, he notice that several of his personal items were missing, including all of his "state-issued pants," sweat pants, sweat shirts, other items of clothing he had purchased at the commissary, and his electronic tablet. His claims that his earbuds had been "smashed to pieces."

He further claims that Director Liebel and Chaplains Aleem, Croto, and Conklin kept his Qur'an for two weeks before returning it to him. He claims that during this period he was unable to perform his daily Qur'an reading, which is a "major sin." He further claims that his religion requires him to "properly cover his private parts" during prayer by wearing pants, but that he was unable to do so for several days because all of his pants had been confiscated and replacements were not immediately provided to him. He claims he was never provided a reason why his personal items were confiscated. He also claims that it is a violation of his religious beliefs for any person who is "not in a state of ritual purity" to touch a Qur'an; this involves various steps of cleaning the hands, face,

3

and feet. He claims that Director Liebel, and Chaplains Aleem, Croto, and Conklin were not in a state of "ritual purity" when they handled his Qur'an during this incident.

Mr. Troutman further claims that from January 2021 to the present, Director Liebel and Chaplains Aleem, Croto, and Conklin have prevented him from purchasing scented prayer oils, telling him instead to purchase unscented oils from the prison commissary. He claims that the unscented prayer oils have "no significance in Islam" and are not a viable substitute. Likewise, he claims that during this period Director Liebel and Chaplains Aleem, Croto, and Conklin have prevented him from purchasing a padded prayer rug from an outside vendor, telling him instead to purchase one from the commissary. He claims the prayer rug at the commissary does not meet his needs because he has knee problems due to the repeated acts of "standing, bowing, prostrating (kneeling), and sitting" he has performed over the last 30 years as a Muslim. He claims that he needs the padded prayer rug to perform his prayers, that there is no legitimate security concern posed by the rug, and that another Muslim inmate has been allowed to purchase one. Based on these events, he sues Mr. Gapski, Director Liebel, Chaplain Conklin, Chaplain Aleem, Chaplain Croto, Deputy Warden Hawk, the unidentified members of E-Squad, and the unidentified Indiana parole agents, seeking monetary damages and various forms of injunctive relief.

"The Free Exercise Clause prohibits the state from imposing a substantial burden on a central religious belief or practice." *Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013) (internal quotation marks and citations omitted). "A substantial burden puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ortiz v.*

*Downey*, 561 F.3d 664, 669 (7th Cir. 2009) (citation and internal quotation marks omitted). A prison practice that imposes a substantial burden on the free exercise of religion "may be justified if it is reasonably related to legitimate penological interests." *Kaufman*, 733 F.3d at 696 (internal quotation marks and citation omitted). The Religious Land Use and Institutionalized Persons Act (RLUIPA) offers broader protections than the First Amendment by prohibiting substantial burdens on "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012); *see also* 42 U.S.C. § 2000cc-5(7)(A). RLUIPA provides for injunctive relief, although not monetary damages against state officials. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011).

Giving Mr. Troutman the inferences to which he is entitled at this stage, he has alleged a plausible claim for damages under the First Amendment. He alleges that he was denied prayer beads and Kufis central to his religious practice in October 2020; denied several items he needed to celebrate Ramadan in March 2021; and had his Qur'an and other items he needed to perform daily prayers confiscated for several days in March 2021. The complaint can be read to allege that there was no legitimate security justification for these actions. He will be permitted to proceed on a claim for damages against Director Liebel, Mr. Gapski, Chaplain Conklin, Chaplain Croto, Chaplain Aleem, and Deputy Warden Hawk in connection with these incidents.

Mr. Troutman also sues several unnamed members of the prison's "E-Squad" and unnamed "parole agents"[1] who were involved in the March 2021 incident wherein his Qur'an and other personal items were confiscated. As described in the amended complaint, their only alleged involvement was to escort him to another area of the prison for a period of approximately 90 minutes while Director Liebel and the Chaplain defendants searched his cell. There is no plausible basis to infer that these defendants were doing anything other than carrying out an order to remove him from his cell, nor can the court plausibly infer that being removed from his cell for a period of 90 minutes substantially burdened his religious practice. *Rapier v. Harris*, 172 F.3d 999, 1006 n. 4 (7th Cir. 1999) ("De minimis burdens on the free exercise of religion are not of constitutional dimension."). Mr. Troutman is being permitted to proceed on a claim against Director Liebel and the Chaplain defendants for confiscating certain items during this incident, but he has not stated a plausible claim against the unnamed guards who escorted him from his cell.[2]

He also claims that he is still being denied scented prayer oils and a padded prayer rug needed to exercise his religion. The complaint can be read to allege that there is no legitimate security justification for denying him these items because other inmates have

---

[1] He does not elaborate on who these individuals were, and it is unclear why agents of the Indiana Parole Board would be present during this incident or would be responsible for escorting Mr. Troutman to another area of the prison.

[2] Even if he could state a viable claim against these defendants, as a practical matter "placeholder" defendants cannot be served with process to bring them into this lawsuit. Those defendants would have to be identified and served within the relevant limitations period and the deadline specified in Federal Rule of Civil Procedure 4(m). *See Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022).

been allowed to have them. Mr. Troutman will be permitted to proceed on a claim against Director Liebel for injunctive relief in connection with these items.

Mr. Troutman also asserts a claim against Mr. Gapski for mishandling his mail. Inmates have a First Amendment right to send and receive mail *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). "Legal mail" is entitled to greater protection, but this a term of art referring only to mail to or from the inmate's legal counsel that is clearly identified on the envelope. *Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005). Legal mail cannot be opened outside the inmate's presence so as to protect his privileged communications with his attorney, but it must be "marked with an attorney's name" and contain "a warning that the letter is legal mail." *Id.* Mr. Troutman does not describe the mail at issue in any detail or allege that prison staff opened or tampered with mail sent to or from his attorney. Rather, he describes one incident wherein some type of mail was marked "return to sender" by Mr. Gapski because it did not bear Mr. Troutman's full legal name and IDOC number in accordance with prison policy. He has not alleged a plausible constitutional claim in connection with this isolated incident. *Rowe*, 196 F.3d at 782 (sporadic or isolated interruptions to prisoner's mail do not trigger a constitutional claim). To the extent he is claiming Mr. Gapski violated prison policy in connection with the handling of his mail, this cannot form the basis for a constitutional claim. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations").

Relatedly, he claims his family ordered him a dictionary and two other references books that he never received. When he inquired, Mr. Gapski allegedly told him that they

never arrived, but he suspects that Mr. Gapski intentionally destroyed the books or gave them to another inmate to retaliate against him for grievances he filed. Under the First Amendment, an inmate can't be punished for engaging in certain kinds of speech. To assert a First Amendment retaliation claim, an inmate must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citation omitted). The third factor requires some "causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).

Filing a grievance qualifies as "protected activity" for purposes of a First Amendment claim. *Gomez*, 680 F.3d at 866. However, Mr. Troutman has not satisfied the second and third prongs. The court cannot plausibly infer that losing some reference books on one occasion is the type of deprivation that would "dissuade a reasonable person from engaging in future First Amendment activity." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). As to the third prong, he does not include the date he filed the grievances, but states that they pertained to the October 2020 incident wherein he was unable to purchase items because Mr. Gapski and the others failed to advise him of the ordering deadline. The alleged destruction of his books occurred approximately five months later, and there is no other factual content linking the two events. He has not plausibly alleged a First Amendment retaliation claim against Mr. Gapski. To the extent he is seeking compensation for the lost books, he has an adequate state post-deprivation

remedy available and thus cannot pursue a federal claim on this ground. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("[Plaintiff] has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due.").

Finally, he alleges in passing that "Defendants treated Plaintiff adversely different based upon his race." "The Equal Protection Clause of the Fourteenth Amendment prohibits intentional racial discrimination." *Williams v. Dart*, 967 F.3d 625, 637 (7th Cir. 2020). To assert an equal protection claim, a prisoner must allege that he is a member of a protected class and that the prison treated him less favorably than other prisoners not in the class but who are similarly situated. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005). Mr. Troutman does not link his allegation of race discrimination to any particular defendant or to any specific incident among the many incidents he describes in his amended complaint. He mentions in reference to the Ramadan incident that another inmate was "allowed to purchase most of the same items" he wanted to buy, but he does not provide the inmate's race or other details from which the court could infer that he was outside Mr. Troutman's protected class but otherwise similarly situated to him. Likewise, he mentions that another inmate was allowed to purchase a padded prayer rug, but against he does not provide the inmate's race or other information from which the court could infer that the difference in treatment was based on intentional race discrimination. The court has considered his allegations that other inmates were allowed to have these religious items in connection with his Free Exercise claims, but he does not plausibly allege a violation of the Equal Protection Clause.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Director David Liebel in his official capacity for injunctive relief under the Religious Land Use and Institutionalized Persons Act to obtain scented prayer oils and a padded prayer rug needed for his religious practice;

(2) GRANTS the plaintiff leave to proceed on a claim for monetary damages against Sharon Hawk, David Liebel, Kevin Conklin, William Croto, and Michael Gapski in their personal capacities for refusing to permit him to order prayer beads and Kufis in October 2020 in violation of the First Amendment;

(3)  GRANTS the plaintiff leave to proceed on a claim for monetary damages against David Liebel, Ismail Abdul Aleem, Kevin Conklin, and William Croto in their personal capacities for denying him religious items he intended to use during Ramadan in March 2021 in violation of the First Amendment;

(4) GRANTS the plaintiff leave to proceed on a claim for monetary damages against David Liebel, Ismail Abdul Aleem, William Croto, and Kevin Conklin in their personal capacities for confiscating his Qur'an and clothing he needed to perform his prayers during a two-week period in March 2021 in violation of the First Amendment;

(5) DISMISSES all other claims;

(6) DISMISSES the Unknown Indiana Parole Agents and Unknown E-Squad Officers as defendants;

(7) ORDERS David Liebel, Kevin Conklin, William Croto, Ismail Abdul Aleem, Sharon Hawk, and Michael Gapski to respond, as provided in the Federal Rules of Civil

Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

October 28, 2022                                     s/ Damon R. Leichty
                                                    Judge, United States District Court